UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

COMPOSITE STRUCTURES, INC. d/b/a
MARLOW MARINE SALES,

    Plaintiff,

v.                                           Case No.: 8:12-cv-173-JDW-TGW

THE CONTINENTAL INSURANCE COMPANY,

    Defendant.
_____/

## ORDER

In Count I of this action, Marlow Marine Sales seeks a declaration that Continental Insurance Company owed a duty to defend and indemnify Marlow in an underlying lawsuit against Marlow. Before the Court are the parties' motions for summary judgment (Dkts. 26, 35), and their respective responses in opposition (Dkts. 34, 39). Upon consideration, Continental Insurance Company's motion is granted, and Marlow Marine Sales's motion is denied.

The dispositive question in this action is when, if ever, is it appropriate to look beyond the complaint in an underlying action in order to determine an insurer's duty to defend. While the general rule is that the duty to defend is based solely on the underlying complaint, an exception arises where that pleading would not be expected to disclose the facts necessary to determine the duty to defend. Because this cause fits squarely within this exception, and the undisputed evidence shows that the underlying claims are excluded from coverage, no duty to defend arose.

### Background

On February 12, 2007, two seamen filed the underlying action. They alleged that they suffered bodily injury from exposure to carbon monoxide fumes while working aboard a yacht that Marlow designed, manufactured, and sold. *Dent v. Composite Structures, Inc. d/b/a Marlow Marine*

*Sales*, No. 8:07-cv-274-VMC-AEP (M.D. Fla.).[1] The seamen specifically alleged that they began working on the vessel in June 2004. (Underlying Compl. ¶ 6).

Continental insured Marlow under two marine services commercial general liability policies (ML 0870854 and ML 0871243), a marine excess liability policy (EX 0118381), and a boat dealers and marine operators coverage policy (H 1014716). On March 7, 2007, Marlow's insurance broker provided a copy of the complaint to Continental. The broker's cover letter only identified Policy H 1014716 and stated that he "would appreciate your opening a claim file and assigning an adjuster to the case." (Dkt. 26-7, p. 2). On March 21, 2007, Continental informed Marlow that it was attempting to locate the relevant policy and that it could not determine its duty to defend or indemnify before confirming the issuance of the policy and its terms and conditions, as well as the circumstances surrounding the claim. (Dkt. 2, Ex. B, pp. 25-29). Continental stated that it would provide a coverage determination when the policy was located and when Marlow provided certain additional information. (*Id.*). Continental reserved its right to deny or limit coverage based on the terms and conditions of the policy. (*Id.*). Finally, Continental noted that CHUBB had advised that counsel had already been retained by CHUBB to provide a defense for Marlow in the underlying action. (*Id.*).

On March 27, 2007, the seamen filed a memorandum of law in the underlying action which represented that "the period of initial exposure to carbon monoxide was from July 5, 2004 through January 22, 2005 (when the defect was supposedly repaired by Defendant, Composite Structures)." (No. 8:07-cv-274, Dkt. 8). Approximately two weeks later, Continental learned of the dates set forth in that filing. (Dkt. 34-2). On April 9, 2007, CHUBB informed Marlow that its defense would be withdrawn in thirty days, because its policy period began after the date on which the seamen had acknowledged that they were first exposed to carbon monoxide fumes (Dkt. 2, Ex. B, p. 30).

On May 16, 2007, Continental issued a letter denying coverage under its four policies (Dkt.

---

[1] According to Marlow, that action settled pursuant to a confidential settlement agreement (Dkt. 2, p. 4, ¶ 21).

26-8). For purposes of this action, the focus is limited to Continental's two CGL policies, as Marlow has conceded that policies EX 0118381 and H 1014716 are inapplicable if there is no coverage under one of the CGL policies (Dkt. 34, p. 23).[2] In its letter, Continental denied coverage under the CGL policies based the following exclusion:

> MARINE SERVICES LIABILITY POLICY
> POLLUTION BUY BACK
>
> The exclusion relating to pollution and/or contamination is deleted and replaced by the following:
>
> A. This insurance does not apply to:
>
> 1. Any loss, damage, cost, liability, expense, fine or penalty:
>
> (a) Which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time; . . .
>
> Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, oil, petroleum products, chemicals and waste. . . .
>
> * * *
>
> <u>C. Paragraph A. above shall not apply, however, provided that you establish that all of the following conditions have been met</u>:
>
> 1. The "occurrence" was neither expected nor intended by the insured. An "occurrence" shall not be considered unintended or unexpected unless caused by some intervening event neither foreseeable nor intended by the insured.
>
> 2. The "occurrence" can be identified as commencing at a specific time and date during the term of this policy.
>
> <u>3. The "occurrence" became known to the insured within seventy-two (72) hours after its commencement.</u>
>
> <u>4. The "occurrence" was reported in writing to us within thirty (30)</u>

---

[2] Further, Continental persuasively argues that the marine excess liability policy and boat dealers and marine operators coverage policy do not afford coverage, which Marlow has not attempted to refute.

3

>    days after having become known to the insured.
>
>    5. The "occurrence" did not result from the insured's intentional and willful violation of any government statute, rule or regulation.

(Dkt. 26-10, pp. 42-43; Dkt. 26-11, pp. 48-49) (emphasis added).[3] Specifically, Continental noted that Marlow "is unable to establish that Plaintiffs' exposure to carbon monoxide became known to them within seventy-two (72) hours after its commencement on or about July 5, 2004." (Dkt. 26-8, p. 5).

After the settlement of the underlying action, Marlow commenced this action for a declaratory judgment that Continental had a duty to defend and indemnify it in the underlying action. Both parties have moved for summary judgment. In its motion, Continental argues that the allegations in the underlying complaint fall within the pollution buy back exclusion. Continental contends that the exception does not apply because the undisputed facts demonstrate that the third and fourth required conditions were not met. Specifically, Continental argues that Marlow learned of the carbon monoxide emissions and crew members' exposure more than 72 hours after it commenced and that Marlow failed to report the incident to Continental within 30 days.

Marlow does not dispute that it learned of the exposure more than 72 hours after the occurrence or that it failed to report the incident to Continental within the next 30 days. Marlow argues that Continental's duty to defend was established by the allegations in the complaint filed against Marlow because the complaint is "silent as to any facts indicating whether some of the five circumstances [of the exception to the pollution buy back exclusion] were or were not met." (Dkt. 34, p. 15).

## Standard

Summary judgment is proper if following discovery, the pleadings, depositions, answers to

---

[3] The policies define "Occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Dkt. 26-10, p. 19; Dkt. 26-11, p. 24).

interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. The evidence and all factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). The Court will not weigh the evidence or make findings of fact. *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). "[T]he court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the non-moving party." *Id.*

### The Duty to Defend

"It is well settled that an insurer's duty to defend its insured against a legal action arises when the complaint alleges facts that fairly and potentially bring the suit within policy coverage." *Jones v. Fla. Ins. Guar. Ass'n, Inc.*, 908 So. 2d 435, 442-43 (Fla. 2005). "However, if the pleadings show the applicability of a policy exclusion, the insurer has no duty to defend." *State Farm Fire & Cas. Co. v. Tippett*, 864 So. 2d 31, 35 (Fla. 4th DCA 2003). "When an insurer relies on an exclusion to deny coverage, it has the burden of demonstrating that the allegations of the complaint are cast solely and entirely within the policy exclusion and are subject to no other reasonable interpretation." *Castillo v. State Farm Fla. Ins. Co.*, 971 So. 2d 820, 824 (Fla. 3d DCA 2007) (quotation omitted). "If there is an exception to the exclusion, the burden . . . is placed on the insured to demonstrate the exception to the exclusion." *East Fla. Hauling, Inc. v. Lexington Ins. Co.*, 913 So. 2d 673, 678 (Fla. 3d DCA 2005); *see LaFarge Corp. v. Travelers Indem. Co.*, 118 F.3d 1511, 1516 (11th Cir. 1997) (in duty to defend action, placing burden on insured to demonstrate an exception to the pollution exclusion).

The general rule is "that an insurer's obligation to defend is determined solely by the claimant's complaint if suit has been filed." *Higgins v. State Farm Fire & Cas. Co.*, 894 So. 2d 5, 10 (Fla. 2004). However, "there are some natural exceptions to this where an insurer's claim that there is no duty to defend is based on factual issues that would not normally be alleged in the

underlying complaint." *Id.* at 10, n.2.

The underlying complaint, which alleged that the seamen suffered bodily injuries from exposure to carbon monoxide, plainly falls within the scope of the pollution buyback exclusion, which Marlow does not dispute. And while the underlying complaint arguably alleges facts relevant to certain requirements for the exception to that exclusion, it is devoid of any allegations addressing the third and fourth requirements. Indeed, as Marlow observes, the seamen's complaint "is absolutely silent as to any dates or timeframes when the 'occurrence' became known to Marlow" or "when the 'occurrence' was reported" to Continental. (Dkt. 35, p. 14). The question, therefore, is whether these are factual issues that would normally be alleged in the underlying action. *Higgins*, 894 So. 2d at 10, n.2.

The underlying action against Marlow consisted of products liability claims based on theories of negligence and strict liability. In Florida, a plaintiff asserting a products liability claim sounding in negligence must allege "(1) that the defendant owed a duty of care toward the plaintiff, (2) that the defendant breached that duty, (3) that the breach was the proximate cause of the plaintiff's injury, and (4) that the product was defective or unreasonably dangerous." *Cooper v. Old Williamsburg Candle Corp.*, 653 F. Supp. 2d 1220, 1226 (M.D. Fla. 2009). "[A]n action sounding in strict liability requires the plaintiff to prove that (1) a product (2) produced by a manufacturer (3) was defective or created an unreasonably dangerous condition (4) that proximately caused (5) injury." *Edward M. Chadbourne, Inc. v. Vaughn*, 491 So. 2d 551, 553 (Fla. 1986).

Neither cause of action requires a plaintiff to allege the specific date on which he informed the defendant of his injuries or the specific date on which the defendant informed its insurer. Indeed, before filing suit, an injured plaintiff is unlikely to be privy to information regarding the date on which a defendant informs its insurer of the incident. Those facts "would not normally be alleged in the underlying complaint," and therefore, the duty to defend can only be determined by examining

outside evidence. *Higgins*, 894 So. 2d at 10, n.2.[4]

Beyond the underlying complaint, the undisputed evidence demonstrates that Marlow fails to satisfy the pollution buy back exception's requirements that "the 'occurrence' became known to the insured within seventy-two (72) hours after its commencement" and that "the 'occurrence' was reported in writing to [Continental] within thirty (30) days after having become known to the insured." (Dkt. 26-10, p. 43; Dkt. 26-11, p. 49).

Marlow agrees that the relevant "occurrence" was the seamen's exposure to carbon monoxide and that the occurrence "commenced beginning June 2004." (Dkt. 35, p. 13). It was not until January 3, 2005, however, that one of the crew members reported to the vessel's owner that exhaust gases were coming through the sink drains. (White Dep. p. 33). On January 10, 2005, the vessel was taken to Marlow's shipyard for repairs to the exhaust system.[5] (*Id.* p. 38). During the course of the repairs, the vessel's owner informed one of Marlow's employees that a crew member had been experiencing symptoms that could be related to diesel exhaust. (*Id.* pp. 39, 91). Email correspondence on January 25, 2005 shows that Marlow was aware that exhaust gases were entering the vessel's living quarters. (Dkt. 39-2). On February 24, 2005, the owner of the vessel sent another email which specifically informed Marlow that one of the crew members received an opinion from a neurologist that she was suffering from carbon monoxide poisoning. (Dkts. 39-3, 39-4). Accordingly, even if the "occurrence" commenced in June 2004, as Marlow contends, Marlow did not become aware of the occurrence until early 2005, and Continental was not provided with written notice of the occurrence until March 7, 2007 (Dkt. 26-7). Under the circumstances, Continental was well within its rights to deny coverage.

---

[4] Marlow relies on *Acosta, Inc. v. National Union Fire Insurance Co.*, 39 So. 3d 565 (Fla. 1st DCA 2010), which is fully consistent with this application of *Higgins*. In addressing the "prior litigation" exclusion, the First District Court of Appeal held that the trial court properly considered evidence other than the underlying complaint, specifically, the complaint from the prior litigation. 39 So. 3d at 575.

[5] While Marlow was aware that dust or soot was accumulating in the vessel sometime in 2004 (Marlow Dep. pp. 29-32; White Dep. pp. 29-30), there is no evidence or suggestion that Marlow became aware that any crew member had experienced carbon monoxide poisoning prior to 2005.

For its part, Marlow has not submitted any evidence (or even argued) that it became aware of the occurrence within 72 hours of commencement or that Continental was provided written notice within 30 days. Instead, Marlow suggests that the duty to defend should be determined from the facts and circumstances available to Continental at the time it declined coverage. However, Continental did not deny coverage until the seamen disclosed in a court filing that their exposure to carbon monoxide began on July 5, 2004. At that point, Continental had obtained sufficient information to determine that Marlow (1) received notice well beyond the required 72 hour period, and/or (2) failed to provide notice to Continental within 30 days thereafter. To the extent Marlow contends that Continental should have defended under a reservation of rights before denying coverage, its argument is hollow because CHUBB was already providing a defense of the action until a few short days before Continental denied coverage.

Marlow suggests that the pollution buyback exclusion effectively transforms its occurrence-based policy into a claims-made policy. Yet, Marlow does not develop this argument or explain how it would preclude enforcement of the exclusion's plain language. Indeed, courts have found that the notice requirement in the pollution buyback exclusion must be enforced as written. *See, e.g., Matador Petroleum Corp. v. St. Paul Surplus Lines Ins. Co.*, 174 F.3d 653, 658-60 (5th Cir. 1999); *Venco, Inc. v. Gulf Underwriters Ins. Co.*, 96 Cal. Rptr. 3d 409, 416-17 (Cal. Ct. App. 2009). In *Matador*, the Fifth Circuit did observe that under Texas law, occurrence policies require a showing of prejudice before coverage is denied based on a failure to provide timely notice, whereas claims-made policies require no showing of prejudice.174 F.3d at 658-59. However, Marlow does not argue that Continental must demonstrate prejudice before enforcing the pollution buyback exclusion. Further, the Court agrees with the Fifth Circuit that the plain language of the pollution buy back exclusion requires timely reporting to trigger coverage, regardless of any prejudice. *Id.* at 659-60; *see also Vanco*, 96 Cal. Rptr. 3d at 416-17.

In sum, the undisputed evidence shows that the pollution buyback exclusion applies and that Marlow cannot satisfy its burden of demonstrating the requirements for the exception. Continental

therefore has no duty to defend the underlying action.

### The Duty to Indemnify

Courts have "uniformly held that a determination that there is no duty to defend against a particular claim carries with it the inevitable conclusion that there is none to pay an eventual judgment which may be entered upon that claim." *Federal Ins. Co. v. Applestein*, 377 So. 2d 229, 233 (Fla. 3d DCA 1979); *Fun Spree Vacations, Inc. v. Orion Ins. Co.*, 659 So. 2d 419, 422 (Fla. 3d DCA 1995). Because there is no duty to defend, there can be no corresponding duty to indemnify, as Marlow concedes (Dkt. 34, p. 23).

### Conclusion

Accordingly, Continental Insurance Company's motion for summary judgment is GRANTED, and Marlow Marine Sales's motion for summary judgment is DENIED. Continental Insurance Company has no duty to defend or indemnify Marlow Marine Sales for the claims in the underlying action. The clerk is directed to ENTER JUDGMENT in favor of Continental Insurance Company and to CLOSE the file.[6] All pending motions are DENIED as moot.

**DONE AND ORDERED** this 11th day of October, 2012.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record

---

[6] The request for oral argument (Dkt. 36) is denied, as the parties have thoroughly briefed the issues, and a hearing would not materially assist the resolution of this matter.

9